## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DIGITAL MEDIA TECHNOLOGY
HOLDINGS, LLC,

              Plaintiff,

     vs.

DIGITAL CINEMA DISTRIBUTION
COALITION LLC,

             Defendant.

C.A. No. 1:24-cv-01321-CFC

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

Xin-Yi Zhou
Ohona Chowdhury
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: (213) 430-6000
vzhou@omm.com
ochowdhury@omm.com

Patric Reinbold
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
preinbold@omm.com

Dated: January 27, 2025

Jason J. Rawnsley (#5379)
Gabriela Z. Monasterio (#7240)
RICHARDS LAYTON & FINGER,
P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
rawnsley@rlf.com
monasterio@rlf.com

*Attorneys for Defendant Digital
Cinema Distribution Coalition LLC*

# **Table of Contents**

I.      INTRODUCTION ..........................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...................................2

III.    SUMMARY OF ARGUMENTS ......................................................2

IV.     STATEMENT OF FACTS .............................................................2

V.      LEGAL STANDARD ...................................................................4

VI.     ARGUMENT ..............................................................................6

    A.    Claim 1 Is Invalid Under 35 U.S.C. § 101. ......................................6

        1.    *Alice* Step One: Claim 1 Is Directed to an Abstract Idea. .........6

            a.    Claim 1 Is Directed to Well-Known Business
                  Practices. ..................................................................7

            b.    The Patent Specification Confirms that the Claim
                  Uses Computers to Perform a Known Business
                  Process. ....................................................................10

            c.    Courts Have Invalidated Similar Patents that
                  Apply Computer Technology to Content
                  Distribution. ..............................................................12

        2.    *Alice* Step Two: Claim 1 Uses Generic Computers and
              Thus Lacks an Inventive Concept. ..........................................15

    B.    Dependent Claims 2-12 Are Also Invalid Under 35 U.S.C. §
          101. ...........................................................................................17

VII.    CONCLUSION ...........................................................................20

## Table of Authorities

Page(s)

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ...................................................................14

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ...................................................................13

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................. passim

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) .................................................... 6, 12, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................5

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................5, 6

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
  955 F.3d 971 (Fed. Cir. 2020) .....................................................................7

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ...............................................................8, 14

*buySAFE, Inc. v. Google Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ...................................................................5

*Chewy, Inc. v. Int'l Bus. Machines Corp.*,
  94 F.4th 1354 (Fed. Cir. 2024) ...............................................................7, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ..................................................................18

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) ..................................................................15

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ..................................................................13

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ......................................................... 5, 7, 20

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..................................................................14

*FairWarning IP, LLC v. Iatric Sys. Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ..................................................................16

**Table of Authorities**
(continued)

Page(s)

*Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019 ................................................................ 10, 15

*GeoComply Sols. Inc. v. Xpoint Servs. LLC*,
   No. 22-1273-WCB, 2023 WL 1927393 (D. Del. Feb. 10, 2023)............... 5, 6, 20

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
   60 F.4th 1349 (Fed. Cir. 2023) ....................................................................8

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................ 15, 16

*In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*,
   No. 14-CV-887-CFC, 2018 WL 6617142 (D. Del. Dec. 18, 2018)............. 17, 18

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ....................................................................7

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ..................................................................19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ..................................................................14

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ....................................................................12

*State St. Bank & Tr. Co. v. Signature Fin. Grp., Inc.*,
   149 F.3d 1368 (Fed. Cir. 1998) ....................................................................1

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ................................................................ 13, 14

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .............................................................. passim

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363, 1367 (Fed. Cir. 2019) ...................................................... 10, 15

*Visual Memory LLC v. Nvidia Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ..................................................................14

*Voit Techs., LLC v. Del-Ton, Inc.*,
   757 F. App'x 1000 (Fed. Cir. 2019).............................................................7, 8

## I.     <u>INTRODUCTION</u>

Plaintiff Digital Media Technology Holdings, LLC ("Plaintiff") asserts a long expired patent with claims that are directed to the abstract—and well-known—practices of organizing and distributing media content for marketing.  The asserted patent, U.S. Patent No. 7,574,725 (the "'725 Patent"), issued in 2009 under the then-applicable standard that "anything under the sun that is made by man" is patent eligible.  *State St. Bank & Tr. Co. v. Signature Fin. Grp., Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998).  However, the Supreme Court has since clarified the patent-eligibility standard in *Alice Corp. v. CLS Bank Int'l* by setting forth a two-part test. 573 U.S. 208 (2014).  The '725 Patent fails each part of that test.

The '725 Patent claims the abstract idea of organizing, distributing, and marketing media content and related advertisements.  It describes nothing but using ordinary computers to perform ordinary business tasks.  The idea of organizing media content and advertisements and distributing that data for marketing purposes was well-known in the media marketing business for decades.  The '725 Patent proposes no technological improvement or innovation to these practices: it simply calls for using general-purpose computers to perform them.  Because the '725 Patent does not identify, let alone solve, any technical problem and, instead, applies conventional technology to an abstract idea, it is ineligible for patent protection under *Alice*.  Thus, Plaintiff's complaint should be dismissed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff alleges infringement of "at least claim 1 of the '725 Patent." D.I. 1 (Complaint), ¶ 22. Defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) because the '725 Patent is invalid under 35 U.S.C. § 101.

## III.    SUMMARY OF ARGUMENTS

1.    Claims 1-12 of the '725 Patent are invalid because they are directed to the abstract idea of organizing, distributing, and marketing media content and related advertisements, and they implement this abstract idea using generic computers without adding an inventive concept.[1]

## IV.    STATEMENT OF FACTS

The '725 Patent is titled "Multimedia Marketing and Distribution System." D.I. 1-1 (the '725 Patent), 1.[2]   The patent specification describes the claimed invention as "relat[ing] to the marketing and distribution of multimedia material, including digitally generated film, video, graphics and audio, and analogues [sic] traditional media converted into digital movie and television programs, and associated marketing materials for distribution over a computer network to

---

[1] The complaint alleges infringement of "at least claim 1" and provides allegations only for claim 1. D.I. 1, ¶ 22. This motion addresses claims 1-12.

[2] Plaintiff previously asserted the '725 Patent in *Digital Media Technology Holdings, LLC v. Disney Media & Entertainment Distribution LLC*, No. 1:22-cv-01642-CJB (D. Del., filed Dec. 29, 2022). In that case, the Defendant moved to dismiss under 35 U.S.C. § 101. *See id.*, D.I. 21. The Court did not rule on the motion before the case was stayed pending *Inter Partes* Review. *See id.*, D.I. 76. As of the date of filing, the case remains stayed.

exhibitors and broadcasters." *Id.*, 1:20-25. Claim 1 of the '725 Patent is a method

claim that includes six steps—(a) through (f)—and one "wherein" limitation—(g):

> 1. A method of marketing and distributing multimedia, the method comprising:
>
> a. receiving, by a server, multimedia material and advertising material from a producer or owner of said multimedia material, said advertising material being associated with said multimedia material, said advertising material comprising audio and video components;
>
> b. storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format;
>
> c. providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;
>
> d. providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;
>
> e. downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material; and
>
> f. providing said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, said purchasers downloading said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material, said purchasers storing the downloaded

correlated information in a digital format corresponding to said advertising material; and

g. wherein said purchaser is an exhibitor exhibiting said multimedia material, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital format corresponding to said stored associated advertising material, being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed.

*Id.*, 16:19-17:2.

At a high level, step (a) describes receiving "multimedia material" and associated "advertising material" from a content producer; step (b) describes storing this content "in a digital format"; step (c) describes providing potential purchasers with access to the stored content over a communication network; step (d) describes providing "samples" of the stored information to potential purchasers; step (e) describes downloading the "multimedia material" to purchasers; and step (f) describes providing and downloading "advertising material" to market the "multimedia material." *Id.* Element (g) requires exhibiting the "multimedia material … in a public theater to a number of individuals in exchange for a paid admission" and showing the "advertising material … at a time or in a place different from the time or place at which said associated multimedia material is displayed." *Id.*

## V.   **LEGAL STANDARD**

A complaint must be dismissed if it fails to plead sufficient facts to "state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A patent-infringement complaint fails to state a plausible claim, and can be dismissed on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6), if it asserts a patent that claims ineligible subject matter. *See buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

The scope of subject matter eligible for patent protection "contains an important implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216. The Supreme Court has developed a two-part test for determining whether a patent claim falls into the "abstract idea" exception. *Id.* at 218. Step one determines whether a claim is "directed to" an abstract idea. *Id.* This step considers the claim's overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Applying step one of the *Alice* test, courts have "identified fundamental economic and business practices as abstract ideas." *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. 22-1273-WCB, 2023 WL 1927393, at *4 (D. Del. Feb. 10, 2023).

If a patent claim is directed to an abstract idea under step one, step two considers whether the claim elements recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18. The inventive concept cannot be a generic computer implementation of the abstract idea either. *See Berkheimer v.*

5

*HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) ("performing [an] abstract idea …

with conventional computer components" does not constitute an inventive concept).

## VI.  ARGUMENT

### A.  Claim 1 Is Invalid Under 35 U.S.C. § 101.

#### 1.  *Alice* Step One: Claim 1 Is Directed to an Abstract Idea.

Claim 1 of the '725 Patent recites steps of organizing and distributing data

using general-purpose computers to market media content.  *See* D.I. 1-1, 16:19-17:2.

The patent admits that industry practitioners have long performed the tasks of

organizing and distributing media content and related advertisements without using

computer technology, and it proposes improving the efficiency of these well-known

practices through such technology.  *See id.*, 1:20-2:44.  However, the '725 Patent's

description of "Related Art" also admits that using computers and networks to

distribute multimedia materials was known prior to the patent's filing.  *See, e.g.*, D.I.

1-1, 1:29-32 ("growth of computer networks, like the Internet, has provided a

convenient way for computer users to obtain from remote sites information in the

form of … video").  Thus, because claim 1 applies "conventional computer

components to well-known business practices," it is directed to an abstract idea.

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016); *see also*

*GeoComply Sols. Inc.*, 2023 WL 1927393, at *4 ("[T]he courts have identified

fundamental economic and business practices as abstract ideas.").

####   *a.*      *Claim 1 Is Directed to Well-Known Business Practices.*

Each of claim 1's steps and elements describe "a fundamental business practice that … is not eligible for patent protection."  *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020).  Steps (a) and (b) describe receiving and storing media content and associated advertisements; steps (c) and (d) provide potential purchasers with access to this material and samples thereof; steps (e) and (f) deliver media content and associated advertisements to purchasers in response to a request; and element (g) describes how purchasers can exhibit the content, such as showing a film in a public theater in exchange for paid admission. D.I. 1-1, 16:19-17:2.  These steps describe three basic business practices—organizing, distributing, and marketing media content and related advertisements. Because these are individual abstract business processes, and the combination of these practices is no less abstract, claim 1 is directed to an abstract idea.  *See Elec. Power Grp.*, 830 F.3d at 1353 (holding that a "combination of … abstract-idea processes" constitutes an "abstract idea").[3]

---

[3] *See also id.* (finding abstract the idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis"); *Chewy, Inc. v. Int'l Bus. Machines Corp.*, 94 F.4th 1354, 1366 (Fed. Cir. 2024) (finding abstract the idea of "identifying advertisements based on search results"); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (finding abstract the idea of "collecting, displaying, and manipulating data of particular documents"); *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1002 (Fed. Cir. 2019) (finding abstract the idea of "entering, transmitting, locating, compressing, storing, and

7

First, claim 1 recites limitations directed to organizing media content by "associat[ing] or "correlat[ing]" certain media with advertisements. D.I. 1-1, 16:19-17:2. For example, step (a) recites "said advertising material being *associated with* said multimedia material." *Id.*, 16:23-24 (emphasis added). Step (b) recites "storing said multimedia material and *associated* advertising material … as *correlated* information in a digital format." *Id.*, 16:26-28 (emphasis added). Step (f) recites "providing said *correlated* information in a digital format *corresponding* to said advertising material that is *associated* with said multimedia material." *Id.*, 16:47-49 (emphasis added). Element (g) recites "deriving said multimedia material from said stored *correlated* information in a digital format *corresponding* to said multimedia material." *Id.*, 16:58-17:2 (emphasis added). These claim limitations associate or correlate "multimedia material" with "advertising material" to allow purchasers to acquire related materials. *Id.*, 16:19-17:2. But organizing information by associating or correlating content is a "human activity" that can be performed without a computer—such as through a paper-based cataloging system—so it is an abstract concept ineligible for patent protection. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018).

Second, claim 1 recites limitations directed to the distribution of media

---

displaying data … to facilitate the buying and selling of items"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356-57 (Fed. Cir. 2023) (finding abstract the idea of "storing and displaying video").

content and advertisements.  For example, steps (a) and (b) recite the steps of "receiving" and "storing" media content and associated advertising material.  D.I. 1-1, 16:21-28.  Step (c) recites, "providing a server system accessible over a communication network … for transfer of" media content.  *Id.*, 16:29-34.  Steps (e) and (f) recite the steps of "downloading" and "providing" media content and advertising material to purchasers.  *Id.*, 16:40-57.  These steps are directed to an abstract idea because they simply apply conventional computer technology to the common business practices of storing and transferring media between parties.

Third, claim 1 recites limitations that cover conventional marketing practices.  Step (d) recites "providing samples … to said potential purchasers."  D.I. 1-1, 16:35-39.  This is a fundamental business practice because movie producers have long used trailers to market films.  *See, e.g.*, D.I. 1-1, 2:7-9.  Similarly, step (f) "allow[s] purchasers to locally market and sell said multimedia material," and element (g) recites "an exhibitor exhibiting said multimedia material … in a public theater" and "said advertising material … being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed."  *Id.*, 16:51-52, 16:58-17:2.  These limitations are not performed by computers, and they reflect common media marketing practices.

In summary, claim 1 focuses on the generic business practices of organizing media contents' advertising material, along with the media content itself;

9

distributing media content, samples of it, and its advertising material to purchasers; and marketing media content and related advertisements. Because these are all longstanding, generic business practices that predate the '725 Patent, performing such tasks using general-purpose computers does not transform the abstract concepts into a patentable invention. *See Alice*, 573 U.S. at 222.

> b. *The Patent Specification Confirms that the Claim Uses Computers to Perform a Known Business Process.*

The '725 Patent's specification itself acknowledges that it does not describe a new process and instead proposes using computers to perform—and reduce the cost of—tasks historically done by people: organizing, distributing, and marketing media content and related advertisements. *See* D.I. 1-1, 1:28-2:44. Because the '725 Patent seeks to "automate 'pen and paper methodologies' to conserve human resources," it is a "quintessential 'do it on a computer' patent" directed to an abstract idea. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

The '725 Patent describes using computers to perform conventional media-organization and distribution tasks for marketing. In explaining conventional distribution, the '725 Patent describes grouping content by shipping "films" and "marketing and advertising materials *associated* therewith" together. D.I. 1-1, 1:54-57 (emphasis added). Thus, claim 1's requirement of "associat[ing] or "correlat[ing]" the claimed "multimedia material" with "advertising material" covers this well-known practice. *Id.*, 16:19-17:2. Similarly, the '725 Patent

acknowledges that distribution and storage of media content were well-known. The specification describes distributing media content through "transportation and shipping" methods, and storing and retrieving media content using storage mediums such as "celluloid prints," "videotapes," "thirty five millimeter release prints," "NTSC, PAL, Beta, one inch, D1 and D2." *Id.*, 1:45-57, 2:18-23. It also identifies "distributing multimedia products" and "the replication and distribution … of movies, videotapes, advertising materials" as known business processes. D.I. 1-1, 1:66-67. Thus, claim 1's steps of "receiving," "storing," "downloading," and "providing" have clear analogues in the pre-computer world of media distribution. *Id.*, 16:19-17:2. And the '725 Patent's specification describes conventional marketing steps such as providing samples (e.g., "trailers") to local marketers and limiting film releases to different local markets. *Id.*, 2:7-9, 2:31-40. It describes "marketing . . . multimedia products," such as "responding to requests for previews, marketing materials" and using "posters . . . in theaters for hyping patrons with respect to coming attractions" as known business processes. *Id.*, 1:66-67, 1:59-60, 14:52-53. All of the organization, distribution, and marketing actions underlying claim 1 have been performed without computers for decades.

The '725 Patent describes nothing more than using computers to increase the efficiency of common business practices. After noting the high costs of marketing and distribution, the '725 Patent proposes using computers to "substantially reduc[e]

11

the costs making the marketing and distribution of movies and television programming to [different] markets economically feasible." *Id.*, 2:40-44. And it describes using computers to make the media "storage, handling and administration" less "time consuming, labor intensive and thus costly." *Id.*, 2:15-30. Using computers to make a known process more efficient does not "render an abstract idea less abstract." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021). And taking an "abstract idea while adding the words 'apply it with a computer'" does not meet the patent-eligibility test. *Alice*, 573 U.S. at 209; *see also Apple, Inc.*, 842 F.3d at 1243 (same). This is exactly what the '725 Patent describes.

### c. Courts Have Invalidated Similar Patents that Apply Computer Technology to Content Distribution.

The Federal Circuit has repeatedly found that patents claiming computer-implemented processes for organizing and distributing content are abstract.

For example, in *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit invalidated a patent that, like the '725 Patent, claimed a "method of advertising and content distribution." 772 F.3d 709, 714 (Fed. Cir. 2014). Just like the '725 Patent, the *Ultramercial* patent recited a long list of computer-implemented steps for distributing media content and advertising materials over the internet. *Id.* at 714-15. There, the court found that neither the length of the patent claims nor their use of computer jargon rendered the claims patentable. *Id.* Examining the idea underlying the claims, the court explained that the "concept embodied by the majority of the

12

limitations describe only the abstract idea of showing an advertisement before delivering free content." *Id.* at 715. The same is true of the '725 Patent: Claim 1's computer-implemented steps are all targeted at the concept of organizing, distributing, and marketing media content and related advertisements.

Similarly, in *Customedia Technologies, LLC v. Dish Network Corp.*, the Federal Circuit invalidated a patent that claimed a computerized system for distributing "advertising data." 951 F.3d 1359, 1363 (Fed. Cir. 2020). While the patentee argued that the claimed system "improve[s] speeds and efficiencies," the Federal Circuit explained that "the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool." *Id.* The same holds true here: The '725 Patent's alleged improvements in the efficiency of content distribution result only from using computers as a tool.

That the '725 Patent applies an abstract idea to a specific context does not transform the idea into patent-eligible subject matter. In *Affinity Labs of Texas, LLC v. DirecTV, LLC*, the Federal Circuit invalidated claims directed to distributing digital media content over the internet even though the claims limited their application to a particular type of content—"out-of-region content." 838 F.3d 1253, 1258 (Fed. Cir. 2016). Here, limiting the '725 Patent to certain types of media content and marketing practices cannot save claim 1 from the *Alice* test. *See id.*; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1333,

1339 (Fed. Cir. 2017) (a claim covering "a system for streaming audio/visual data over a communications system like the internet" is abstract); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (claims on "delivering user-selected media content to portable devices" are abstract).

Cases where the Federal Circuit has upheld patents for including tangible technological improvements are equally instructive.  For example, the Federal Circuit affirmed the eligibility of computer-implemented patents involving "claims that focused on improved ways in which [computer] systems store and access data." *BSG Tech*, 899 F.3d at 1288 (distinguishing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253 (Fed. Cir. 2017)).  But claim 1 of the '725 Patent says nothing about improvements in data access or storage and instead calls for using computers in their "ordinary capacity" to provide, retrieve, and store data.  *Id.*  In *McRO, Inc. v. Bandai Namco Games America Inc.*, the claimed improvement allowed "computers to produce 'accurate and realistic lip synchronization and facial expressions in animated characters' that previously could only be produced by human animators."  837 F.3d 1299, 1313 (Fed. Cir. 2016).  The Federal Circuit found the claims to be patentable because they did not "simply use a computer as a tool to automate conventional activity" but provided "rules with specific characteristics" that improved the underlying process.  *Id.* at 1313-14.  Here, claim 1 of the '725 Patent is devoid of

14

any such specific rules or structures.  Thus, claim 1 is directed to an abstract idea ineligible for patent protection under the first step of the *Alice* test.

**2.    *Alice* Step Two: Claim 1 Uses Generic Computers and Thus Lacks an Inventive Concept.**

Claim 1 of the '725 Patent also fails the second step of the *Alice* test.  This step examines whether the claim elements provide an "inventive concept" sufficient to transform the claim into something "significantly more" than an abstract idea. *Alice*, 573 U.S. at 221-22.  The "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see also Univ. of Fla. Rsch. Found.*, 916 F.3d at 1369 (same).  Because claim 1 of the '725 Patent simply uses generic computer technology to receive, store, provide, and download data, it provides nothing inventive.

Claim 1 describes common computer operations without providing "a solution to a technological problem."  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quotations omitted).  For example, claim 1 of the '725 Patent recites "storing said multimedia material and associated advertising material … as correlated information in digital format." D.I. 1-1, 16:26-28.  But the claim does not describe a specific technique to achieve that result and says nothing about *how* the relevant data is stored and correlated.  The only computer hardware components recited in claim 1 are a "server" (or "server system"), a "computer readable storage

medium," and a "communication network." *Id.*, 16:19-17:2. These are generic components used for their basic functions of receiving, storing, providing, and downloading data; the '725 Patent does not describe any improvement to these functions. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d at 612 (using "server" for "performing generic computer functions such as storing, receiving, and extracting data" is not a technological improvement); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (claims that "merely graft generic computer components onto otherwise-ineligible method claims" are invalid).

Claim 1's ordered combination of steps likewise fails to provide an inventive concept. Again, the '725 Patent's specification admits that the organization, distribution, and marketing of media content were well-known concepts in the media industry long before its filing. *See supra* Section VI.A.1.b. Again, the claimed steps of "receiving," "storing," "providing," and "downloading" all have clear pre-computer analogues. *Id.* Because claim 1 "simply instruct[s] the practitioner to implement [an] abstract idea with routine, conventional" computer operations, it cannot satisfy the second step of the *Alice* test. *Ultramercial, Inc.*, 772 F.3d at 715.

The '725 Patent's specification and figures confirm that it does not address a technological problem. The specification itself suggests the use of "conventional" computer technology, such as using "*conventional* magnetic disk storage such as floppy disks, or the like" for the computer readable storage medium. D.I. 1-1, 8:48-

49 (emphasis added).  Indeed, the specification describes no new technology at all and calls for using only known computer systems and networks to perform media organization, distribution and marketing.  *See, e.g.*, *id.*, 3:13-17 ("In conventional form, the inventive method of marketing and distributing multimedia includes the option of providing a server system accessible over a public communication system, such as the Internet."); *id.*, 11:15-20 ("using the home page 100 as an entry point to subsequent screens for searching and purchasing rights in product and arranging for the transport of the same via the Internet or otherwise, including conventional means").  The patent figures, too, illustrate only generic computer components and the internet, not anything new or unique.  *See id.*, Figs. 1, 9 (depicting generic computers, servers, "Computer Readable Data Storage," and "Cyberspace").

Without any specific improvement to the computer technology used to implement the claimed method, claim 1 provides no "inventive concept" and cannot satisfy the second step of the *Alice* test.  Thus, claim 1 fails both steps of the *Alice* test and is invalid as a matter of law under 35 U.S.C. § 101.

### B.     Dependent Claims 2-12 Are Also Invalid Under 35 U.S.C. § 101.

Claims 2-12 depend on claim 1 and are "substantially similar and linked to the same abstract idea" as claim 1—i.e., organizing, distributing, and marketing media content and related advertisements.  *See In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*, No. 14-CV-887-CFC, 2018 WL 6617142, at \*2 n.3 (D. Del.

Dec. 18, 2018).   These claims add only insignificant limitations, propose no technological improvement, and fail to provide the necessary inventive concept required to transform claim 1's abstract idea into a patentable invention.

Claims 2 and 3 describe digitizing "non-digital media" for computer storage, but describe no new method for doing so.  *See* D.I. 1-1, 17:3-10.   In *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*, the Federal Circuit found no inventive concept in using "existing scanning and processing technology to recognize and store data."  776 F.3d 1343, 1348 (Fed. Cir. 2014).  "At most, [Plaintiff's] claims attempt to limit the abstract idea of recognizing and storing information … to a particular technological environment," but the court noted that "[s]uch a limitation has been held insufficient to save a claim in this context."  *Id.* The '725 Patent similarly describes using conventional "peripheral equipment" such as "scanners" for digitizing visual and graphical materials.  *See* D.I. 1-1, 14:40-53, 6:34-49, 8:6-8, Fig. 2.  Neither the specification nor the claims describe any new digitizing technology.  Thus, there is no inventive concept in the '725 Patent's use of a generic scanner to perform well-understood, routine, and conventional activities common in the industry.  *See Content Extraction & Transmission LLC*, 776 F.3d at 1348.

Claim 4 recites accessing a server "over a public communication system." D.I. 1-1, 17:11-13.  In *Ultramercial*, the Federal Circuit found that "the use of the

Internet is not sufficient to save otherwise abstract claims from ineligibility under §

101." 772 F.3d at 716. For the same reason, claim 4's recitation of a public

communication system does not render the claim patent eligible.

Claim 5 recites "the public showing of a motion picture," and claims 7-10

recite types of media content such as "a motion picture with accompanying

synchronized sound," "a radio commercial," "a motion picture trailer," "a newspaper

advertisement," "a radio spot," or "a poster." D.I. 1-1, 17:14-15, 17:19-32. These

claims describe common features of movies, trailers, and advertisements. They do

not qualify as inventive concepts and do not render claim 1 less abstract.

Claim 6 recites "providing a search function" for media content. D.I. 1-1,

17:16-18. In *Chewy, Inc.*, the court found that "identifying advertisements based on

search results, without any specificity as to how this is accomplished" merely applies

an abstract idea using the computer as a tool. 94 F.4th at 1366 (citations omitted).

In *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the court found that using "a

conventional computer practice for facilitating searches" is not a technological

improvement. 850 F.3d 1315, 1329 (Fed. Cir. 2017). A search operation is a

"routine computer function[]," and claim 6 does not provide any improvement. *Id.*

Claim 11 requires the automatic collection and reporting of "sales and

marketing data," and claim 12 requires "providing marketing data" to exhibitors

"based upon actual uses of said multimedia material." D.I. 1-1, 17:33-41. The '725

Patent admits that "collecting and tracking sales data for royalties and further marketing programs" was a common practice in the film industry. *Id.*, 1:58-62. Thus, claims 11 and 12 are directed to an abstract idea because they automate this common business practice. *See GeoComply Sols. Inc.*, 2023 WL 1927393, at *4 ("[T]he courts have identified fundamental economic and business practices as abstract ideas."). In *Electric Power Group*, the Federal Circuit found that using generic computers to perform the "functions of gathering, analyzing, and displaying in real time" electric power grid data "do[es] not state an arguably inventive concept." 830 F.3d at 1356. Similarly, using computers to collect and provide sales and marketing data for media content does not qualify either.

Dependent claims 2-12 are silent on "how the desired result is achieved": they "do not require any nonconventional computer, network, or display components," and instead claim functions without tying them to a specific implementation. *Id.* at 1355. Thus, these claims are directed to the same abstract idea as claim 1, and fail to provide an inventive concept sufficient to transform it into a patent-eligible application. *See Apple, Inc.*, 842 F.3d at 1245 ("Appending … preexisting technologies onto … independent claims does not make them patentable.").

## VII.  CONCLUSION

Plaintiff's complaint should be dismissed because the claims of the '725 Patent are invalid under 35 U.S.C. § 101.

20

OF COUNSEL:

Xin-Yi Zhou
Ohona Chowdhury
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel:  (213) 430-6000
vzhou@omm.com
ochowdhury@omm.com

Patric Reinbold
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
Tel:  (202) 383-5300
preinbold@omm.com


Dated:  January 27, 2025

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
Gabriela Z. Monasterio (#7240)
RICHARDS LAYTON & FINGER,
P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
rawnsley@rlf.com
monasterio@rlf.com

*Attorneys for Defendant Digital
Cinema Distribution Coalition LLC*