# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC,**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**DIGITAL CINEMA DISTRIBUTION COALITION LLC,**<br><br>        **Defendant.** | C.A. No. 1:24-cv-01321-CFC |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:
Xin-Yi Zhou
Ohona Chowdhury
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: (213) 430-6000
vzhou@omm.com
ochowdhury@omm.com

Patric Reinbold
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
preinbold@omm.com

Jason J. Rawnsley (#5379)
Gabriela Z. Monasterio (#7240)
RICHARDS LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
rawnsley@rlf.com
monasterio@rlf.com

*Attorneys for Defendant Digital Cinema Distribution Coalition LLC*

Date: April 2, 2025

# Table of Contents

I.  INTRODUCTION ...................................................................................1
II. ARGUMENT..........................................................................................1
    A.    Claims 1-12 Are Directed to an Abstract Idea. ....................................1
        1.    The '725 Patent Claims Known Business Processes..................1
        2.    The '725 Patent Does Not Claim a Specific Implementation of Technology..................................................3
        3.    The '725 Patent Does Not Provide a Technological Solution to a Technological Problem..........................................4
        4.    Limiting the '725 Patent to the Film Industry Cannot Change the *Alice* Analysis. .......................................................7
    B.    Claims 1-12 Lack an Inventive Concept. .............................................8
    C.    Claim 1 Is Also Representative of Non-Asserted Claims 13 to 23. ..................................................................................................10
III. CONCLUSION.....................................................................................11

# **Table of Authorities**

Page(s)

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ...................................................................................3

*Ameritox, Ltd. v. Millennium Health, LLC*,
    88 F. Supp. 3d 885 (W.D. Wis. 2015) ......................................................................8, 9

*Attentive Mobile Inc. v. 317 Labs, Inc.*,
    No. CV 22-1163-CJB, 2023 WL 6215825 (D. Del. Sept. 25, 2023) .................5, 6

*Axcess Int'l, Inc. v. Genetec (USA) Inc.*,
    375 F. Supp. 3d 533 (D. Del. 2019) ...........................................................................5

*BNP Holdings LLC v. Intuit Inc.*,
    No. CV 22-65, 2023 WL 6621363 (D. Del. Oct. 11, 2023) ...............................4, 5

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020) .....................................................................................2

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ....................................................................................9

*Customedia Tech., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ....................................................................................6

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ..........................................................................11

*Ultramercial Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .....................................................................................1

*Validity, Inc. v. Project Bordeaux, Inc.*,
    No. CV 23-365-SRF, 2023 WL 6200287 (D. Del. Sept. 22, 2023) ....................11

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ..................10

## I. INTRODUCTION

The '725 Patent describes using ordinary computers to perform common business tasks—organizing, distributing, and marketing media content and related advertisements. Plaintiff's attempt to characterize the claims at issue as "tangible" and "specific" fails because it cannot identify any technological solution or tangible implementation. Indeed, the '725 Patent's claims do not describe how data is organized as "correlated information," nor do they improve media distribution technology. Plaintiff further conflates patent eligibility with novelty, and attempts to place an inapplicable burden of proof on Defendant.[1] None of these arguments demonstrate that the '725 Patent claims eligible subject matter. Thus, the Court should grant Defendant's motion.

## II. ARGUMENT

### A. Claims 1-12 Are Directed to an Abstract Idea.

#### 1. The '725 Patent Claims Known Business Processes.

The '725 Patent's specification admits that using computers and networks to distribute multimedia materials was known prior to the patent's filing. *See, e.g.*, D.I. 1-1 at 1:29-32. Because Plaintiff makes no attempt to describe an improvement to

---

[1] "[W]hile a presumption of validity attaches in many contexts, [] no equivalent presumption of eligibility applies in the section 101 calculus." *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) (Mayer, J., concurring). There is no reason to apply a "clear and convincing" standard in adjudicating a Rule 12(b)(6) motion on the pleadings. *See, e.g.*, *id.* at 717.

this technology, Plaintiff is resigned to characterizing its claims as "relat[ing] to a novel manner of distributing and displaying multimedia material …." D.I. 19 at 4. But multimedia distribution was a known business process, not a recent technology.

Plaintiff's own description of the alleged invention confirms Defendant's analysis. Plaintiff describes claim 1 as reciting steps for ***organizing*** media content by "packaging multimedia material with advertising material …." D.I. 19 at 17. The '725 Patent admits that organizing media is a common business practice. D.I. 1-1 at 1:55-57. Plaintiff also describes claim 1 as reciting steps for "***distributing*** and displaying both multimedia material and advertising material …." D.I. 19 at 17 (emphasis added). Again, distributing multimedia products packaged with advertising materials was known. D.I. 1-1 at 1:66-67, 1:45-47. Plaintiff further describes claim 1 as covering media ***marketing*** by "allow[ing] a potential purchaser to sample both the multimedia material and advertising material" and using "advertising material for physical display to third-party patrons." D.I. 19 at 17. The '725 Patent admits that "marketing … multimedia products," such as "responding to requests for previews, marketing materials" and using "posters … in theaters" are known business processes. D.I. 1-1 at 1:66-67, 1:59-60, 14:52-53. Thus, the '725 Patent claims "a fundamental business practice that … is not eligible for patent protection." *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020).

Plaintiff acknowledges that dependent claims 2 to 12 cover the same basic processes as claim 1 and presents no argument to distinguish these claims. *See* D.I. 19 at 19. Thus, claim 1 is representative of claims 2 to 12, which "should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013).

### 2. The '725 Patent Does Not Claim a Specific Implementation of Technology.

The '725 Patent uses functional language to claim steps of organizing, distributing, and marketing multimedia content. In *U.S. Synthetic Corp. v. ITC*, the Federal Circuit applied *Alice* step one by analyzing "whether a patent claim is directed to a specific implementation of an idea or merely just the idea itself." 128 F.4th 1272, 1283 (Fed. Cir. 2025). Here, the claims at issue do not describe a specific implementation of technology.

For example, claim 1 recites result-oriented steps of "receiving," "storing," "providing," and "downloading" information; it describes neither an improved way to distribute media nor innovative technology to display content. Courts have long found that claims directed to "receiving," "associating," or "providing access" to information are "result-oriented, functional language" insufficient to pass the *Alice* test. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F. 4th 1280, 1292-94 (Fed. Cir. 2024). Moreover, while Plaintiff argues that its claims provide "novel packaging and distribution" (D.I. 19 at 7), the claims are silent on how data is "associated" to form

3

"correlated information." Accordingly, by claiming "functional results" without describing "how to achieve these results," the '725 Patent is directed to an abstract idea. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Plaintiff argues that whether "computer components and business practices" are "conventional" is not part of the first step of the *Alice* test. D.I. 19 at 16 n.8. This argument contradicts established precedents. In *Broadband iTV Inc v. Amazon.com Inc.*, the Federal Circuit explained that "analyzing the conventionality of the claimed … system … at step one is proper for the purpose of determining what the claims are directed to." 113 F.4th 1359, 1369 (Fed. Cir. 2024). And in *Apple, Inc. v. Ameranth Inc.*, the Federal Circuit considered whether the claims at issue applied "conventional computer components to well-known business practices" in analyzing *Alice* step one. 842 F.3d 1229, 1242 (Fed. Cir. 2016). Similarly here, the '725 Patent's use of conventional computer components without requiring a specific implementation of technology demonstrates the claims' abstractness.

### 3. The '725 Patent Does Not Provide a Technological Solution to a Technological Problem.

The "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *BNP Holdings LLC v. Intuit Inc.*, No. CV 22-65, 2023 WL 6621363, at *4 (D. Del. Oct. 11, 2023)

(citation omitted).  For the same reason, the '725 Patent is directed to an abstract idea for claiming the computerization of known business processes without providing "technological solutions to technological problems." *Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp. 3d 179, 185 (D. Del. 2023).

Plaintiff's reliance on *Axcess International* and *Attentive Mobile* (D.I. 19 at 17-18) is misplaced because those cases addressed technological solutions.  In *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, the challenged claim was directed to "using RFID equipment and video to remotely watch over, and limit access to, property." 375 F. Supp. 3d 533, 537 (D. Del. 2019).  The Court explained that the "RFID tag" limitation tethered the claim to specific equipment that provided advantages over how "a human [would] achieve a similar result." *Id*.  In contrast, claim 1 of the '725 Patent does not recite any specific equipment tethered to the alleged invention.  The claimed hardware elements—a "server," a "computer readable storage medium," and a "communications network"—are common to all internet processes.  And while Plaintiff argues that the '725 Patent uses "computer hardware to package and distribute a combined product of multimedia material and advertising material," D.I. 19 at 17-18, the patent's claims do not describe how the materials are packaged into a "combined product" or how that "combined product" differs from media content packaged manually.  Beyond using known computer technology to reduce costs, the '725 Patent neither describes how its method would provide different results from a

5

manual process nor tethers its claims to specific equipment.

Similarly, the '725 Patent differs from the patent at issue in *Attentive Mobile Inc. v. 317 Labs, Inc.*, where the Court found that the challenged claim performed an abstract idea "in a more particular way." No. CV 22-1163-CJB, 2023 WL 6215825, at *4 (D. Del. Sept. 25, 2023). The *Attentive* patent relates to the use of a specific type of link— "uniform resource identifiers"—to transition from one mobile application to another. *Id*. at *3-4. These identifiers linked applications "in a more particular way" that was "not a longstanding commercial practice that people have been engaging in for generations." *Id*. at *4 and *6. In contrast, the '725 Patent seeks to computerize longstanding commercial practices without limiting the claims to specific ways of organizing, distributing, and marketing media content. *See* D.I. 1-1 at 16:19-17:2.

Like the patent found to be ineligible in *Customedia Technologies, LLC v. Dish Network Corp.*, the '725 Patent's "specification is silent as to any specific structural or inventive improvements in computer functionality," meaning the alleged improvement results only from using a computer as a tool. 951 F.3d 1359, 1363, 1365 (Fed. Cir. 2020). This is the hallmark of an abstract patent. While Plaintiff argues that the '725 Patent filled a "preexisting need" for reducing costs, D.I. 17 at 18 (citing D.I. 1-1 at 1:35-52), this benefit flows only from the use of computers.

Plaintiff is unable to materially distinguish the '725 Patent from those invalidated in *Electric Power Grp.*, *GeoComply Solutions Inc.*, and *Chewy, Inc.* Instead, Plaintiff argues that claim 1 of the '725 Patent is different as it recites a "tangible display of multimedia material by exhibitors 'in a public theater to a number of individuals.'" D.I. 19 at 18-19 (citing D.I. 1-1 at 16:19-20 and 16:58-17:2). Setting aside that showing a movie in a theater is not a patent eligible concept, claim 1 of the '725 Patent does not even require such a limitation. *See* D.I. 19-1 at 16:58-63. Element (g) of claim 1 recites a "broadcast exhibitor" as an alternative to theater exhibition, and the claim says nothing about the attributes of the claimed broadcasting. *Id*. Generically claiming media broadcasting *or* theater exhibition does not qualify as a tangible application, and Plaintiff's argument confirms that the claims at issue do not provide a technological solution to a technological problem.

### 4. Limiting the '725 Patent to the Film Industry Cannot Change the *Alice* Analysis.

"An abstract idea does not become nonabstract by limiting the invention to a particular field of use …." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Here, limiting the claims of the '725 Patent to the context of the film industry does not change the patent eligibility analysis.

Plaintiff touts the alleged benefits of the '725 Patent to "the motion picture and television industry." D.I. 19 at 18 (citing D.I. 1-1 at 1:35-52). But an abstract idea is not rendered patentable by limiting it to a particular industry. In *Affinity Labs*

7

*of Texas, LLC v. Directv, LLC*, the Federal Circuit found that applying an abstract idea to a specific technological environment—cell phones—did not "avoid the problem of abstractness." 838 F.3d 1253, 1263 (Fed. Cir. 2016).  Similarly, Plaintiff cannot avoid the *Alice* test by placing the claims against the backdrop of the film industry.  Because claims 1-12 of the '725 Patent merely use computers as a tool to perform known business processes, they are directed to an abstract idea regardless of whether they are limited to the film industry.

      B.    **Claims 1-12 Lack an Inventive Concept.**

Claims 1-12 also fail the second step of the *Alice* test because they do not contain an "inventive concept."  Plaintiff's attempt to characterize claim 1's "correlated information" as an inventive concept fails.  *See* D.I. 19 at 22.

First, claim 1's "correlated information" does not provide an inventive concept because the claim says nothing about *how* "multimedia material" is "being associated" with "advertising material." D.I. 1-1 at 16:21-28.  Indeed, claim 1 recites the result of "said advertising material being associated with said multimedia material" without specifying how the association is determined or what criteria is used for the correlation.  *Id*. at 16:23-24.  Nothing in the claimed method improves—or even describes—how a computer associates data.  *See id*.

Plaintiff cites *Ameritox, Ltd. v. Millennium Health, LLC* to argue that the '725 Patent "improves existing technological processes." D.I. 19 at 15 (citing 88 F. Supp.

8

3d 885, 912 (W.D. Wis. 2015)). But the *Ameritox* patent "improve[d] pre-existing technology" and did not seek to automate "performance of a business practice known prior to the 'pre-internet world.'" 88 F. Supp. 3d at 912. The same cannot be said of the '725 Patent: Its claims seek to reduce the costs of business processes associated with media distribution that have existed for decades. *See, e.g.*, D.I. 1-1 at 1:54-57 (acknowledging that shipping "films" together with "marketing and advertising materials associated therewith" was done in the pre-internet world).

Second, the '725 Patent never describes "correlated information" as an alleged improvement. Rather, the specification states that the improvement comes from the functionality of "a central server … connected to a communications network such as the Internet." *See, e.g.*, D.I. 1-1 at Abstract, 1:29-2:44. But server communication cannot qualify as an "inventive concept" because the "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

Third, Plaintiff conflates patent eligibility with novelty. D.I. 19 at 21-22. Courts have repeatedly rejected the argument that a claim is not abstract because it allegedly claims a new process. "[A] claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *see also Epic IP LLC v. Backblaze, Inc.*, 351 F.Supp.3d 733, 748 (D. Del.

9

2018) ("The Supreme Court has made this point clear, holding that an abstract idea may be new, but nonetheless unpatentable under section 101."). Thus, even if one were to assume that the claimed methods are novel (they are not), that cannot make up for the lack of an "inventive concept" under the *Alice* test. To qualify as an inventive concept, the claims must provide some technological improvement beyond using computers to increase the efficiency of a business process. Because claims 1 to 12 provide no such inventive concept, they fail the *Alice* test.

### C. Claim 1 Is Also Representative of Non-Asserted Claims 13 to 23.

The Court should "decline[] to address claims other than those given meaningful attention by the movants." *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *4 (D. Del. Sept. 30, 2015). The Complaint neither asserts claims 13 to 23 nor alleges facts relevant to their limitations. *See* D.I. 1-1, 1-2. Thus, the Court need not address these claims.

To the extent the Court considers claims 13 to 23, these claims are ineligible for the same reasons as claim 1. Plaintiff concedes that "[c]laims 13 and 15-23 are directed to essentially the same method as claim 1, but with slight modifications for specific embodiments." D.I. 19 at 19. These claims recite the same unpatentable abstract idea using the same generic technology as claim 1, and their "slight modifications" do not change the analysis.

The hardware elements in claim 14—"[first/second] central processing unit,"

10

"[first/second/third] memory," "communications network," "input device," "digital feature film projector," and "screen"—are general-purpose components not specific to the claimed invention. *See Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (finding claims reciting "central processing unit," "memory," "input and output terminal," and "video screen" patent ineligible); *see also Validity, Inc. v. Project Bordeaux, Inc.*, No. CV 23-365-SRF, 2023 WL 6200287, *6 (D. Del. Sept. 22, 2023) (same). Thus, claim 14 is also abstract.

## III.   CONCLUSION

Plaintiff's complaint should be dismissed because the '725 Patent claims patent-ineligible subject matter under 35 U.S.C. § 101.

| | |
|---|---|
| OF COUNSEL:<br><br>Xin-Yi Zhou<br>Ohona Chowdhury<br>O'MELVENY & MYERS LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>Tel:  (213) 430-6000<br>vzhou@omm.com<br>ochowdhury@omm.com<br><br>Patric Reinbold<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC  20006<br>Tel:  (202) 383-5300<br>preinbold@omm.com<br><br>Date:  April 2, 2025 | */s/ Jason J. Rawnsley*<br>Jason J. Rawnsley (#5379)<br>Gabriela Z. Monasterio (#7240)<br>RICHARDS LAYTON & FINGER, P.A.<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>rawnsley@rlf.com<br>monasterio@rlf.com<br><br>*Attorneys for Defendant Digital Cinema Distribution Coalition LLC* |

12