## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC,**<br><br>　　　**Plaintiff,**<br><br>**v.**<br><br>**DIGITAL CINEMA DISTRIBUTION COALITION, LLC**<br><br>　　　**Defendant.** | **Court No. 1:24-cv-01321-JCG** |

## OPINION AND ORDER

[Granting Defendant's Motion to Dismiss.]

Dated:  September 24, 2025

<u>Robert J. Katzenstein</u> and <u>Daniel A. Taylor</u>, Smith, Katzenstein, & Jenkins LLP, of Wilmington, DE; <u>John C. Carey</u>, Carey Rodriguez LLP, of Miami, FL.  Attorneys for Plaintiff Digital Media Technology Holdings, LLC.

<u>Jason J. Rawnsley</u> and <u>Gabriela Z. Monasterio</u>, Richards, Layton, & Finger, PA, of Wilmington, DE; <u>Xin-Yi Zhou</u> and <u>Ohona Chowdhury</u>, O'Melveny & Meyers LLP, of Los Angeles, CA, and <u>Patric M. Reinbold</u>, O'Melveny & Meyers LLP, of Washington, D.C.  Attorneys for Defendant Digital Media Cinema Distribution Coalition, LLC.

Choe-Groves, Judge:  This matter involves patent infringement claims filed

by Digital Media Technology Holdings, LLC ("Plaintiff" or "DMTH") against

Digital Cinema Distribution Coalition, LLC ("Defendant" or "DCDC").  DMTH

alleges that DCDC infringed at least Claim 1 of its patent involving the distribution and display of multimedia material in conjunction with marketing material.  DCDC filed a motion to dismiss claims related to the asserted patent raised in the Complaint.  For the reasons discussed below, DCDC's motion to dismiss is granted.

## BACKGROUND

DMTH is the owner of U.S. Patent No. 7,574,725 ("the '725 Patent" or "Asserted Patent").  Compl. ¶ 12 (D.I. 1).

The '725 Patent is titled "Multimedia Marketing and Distribution System," and was issued by the U.S. Patent and Trademark Office on August 11, 2009.  Id. at ¶¶ 12–13.

On December 5, 2024, DMTH filed its Complaint alleging that Defendant infringed at least Claim 1 of the Asserted Patent, either literally or under the doctrine of equivalents, by making, using, selling, or offering for sale in the United States infringing services in violation of 35 U.S.C. § 271.  Id. ¶ 22.[1]  DMTH seeks

---

[1] DMTH has filed for infringement of the '725 Patent in two other related cases in the District of Delaware.  The first related case is Digital Media Technology Holdings, LLC v. Deluxe Media, Inc., No. 1:25-cv-00038-JCG.  The second case is Digital Media Technology Holdings, LLC v. Disney Media & Entertainment Distribution, LLC, No. 1:22-cv-01642-CJB, which is currently stayed in view of Plaintiff's appeal of the Patent Trial and Appeal Board's Final Written Decision. Order (Oct. 8, 2024), No. 1:22-cv-01642-CJB.

damages adequate to compensate for the infringement, including pre-judgment and post-judgment interest and costs, under 35 U.S.C. § 284.  Id. at 4–5.

On January 27, 2025, DCDC moved to dismiss the Complaint.  Def.'s Mot. Dismiss Compl. Pursuant Fed. R. Civ. P. 12 (b)(6) 35 U.S.C. § 101 ("Def.'s Mot.") (D.I. 12); Def.'s Opening Br. Supp. Mot. Dismiss Compl. ("Def.'s Br.") (D.I. 13). DMTH opposed the motion, and DCDC filed its reply brief.  Pl.'s Answering Br. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp. Br.") (D.I. 19); Def.'s Reply Br. Supp. Mot. Dismiss Compl. ("Def.'s Reply Br.") (D.I. 20).  The Court held oral argument on June 11, 2025.  Oral Arg. (June 11, 2025).

## JURISDICTION AND LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Id.</u> Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Twombly</u>, 550 U.S. 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. <u>Iqbal</u>, 556 U.S. at 679. In patent infringement cases, allegations of infringement are governed by the <u>Iqbal</u>/<u>Twombly</u> pleading standard. <u>Golden v. Apple Inc.</u>, 819 F. App'x 930, 930–31 (Fed. Cir. 2020). There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. <u>Bot M8 LLC v. Sony Corp.</u>, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

DMTH's Complaint alleges that DCDC has infringed at least Claim 1 of the '725 Patent. Compl. ¶ 22. DCDC moves to dismiss the claim for infringement of the '725 Patent for lack of patent eligible subject matter under 35 U.S.C. § 101. Def.'s Mot. at 1.

## I. Patent Eligible Subject Matter

35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."

Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  Simio, LLC v. FlexSim Software Prods., Inc., 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

　　　In Alice, the Supreme Court reaffirmed the two-step framework set forth

in Mayo for distinguishing patents that claim ineligible subject matter from those

that claim patent eligible applications of those concepts.  Alice, 573 U.S. at 217.

　　　In step one, the court must determine whether the claims are drawn to a

patent ineligible concept, such as an abstract idea.  Id.  To do so, the court

examines the focus of the claim and its character as a whole.  SAP Am., Inc. v.

InvestPic, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018).  Courts must consider

whether the focus of the claims is on "the specific asserted improvement in

computer capabilities . . . or, instead, on a process that qualifies as an 'abstract

idea' for which computers are invoked merely as a tool."  Finjan, Inc. v. Blue Coat

Sys., Inc. ("Finjan"), 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC

v. Microsoft Corp. ("Enfish"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court then turns to step two to examine "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217–18 (citation omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." Id. at 221. Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities." Id. at 225 (citation omitted). To transform an unpatentable concept into a patent eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

## II. Representative Claim

DCDC contends that the Court should treat Claim 1 as representative of dependent Claims 2–12 and non-asserted Claims 13–23 of the '725 Patent for purposes of determining patent eligibility. Def.'s Br. at 17–20; Def.'s Reply Br. at 10–11. DCDC argues that the other '725 Patent claims are substantially similar and are directed to the same abstract idea as Claim 1, of organizing, distributing, and marketing media content and related advertisements, and fail to provide an

inventive concept sufficient to transform it into a patent-eligible application. Def.'s Br. at 20.

DMTH states that dependent Claims 2–12 "comprise the same elements" as Claim 1, but "with additional detailed limitations."  Pl.'s Resp. Br. at 7, 19.

A court may limit its analysis of a Section 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted).  Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat the claim as representative."  See Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept.  Mobile Acuity, 110 F.4th at 1290 (citation omitted).  If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group.  Id.  If the patent owner cannot make a non-frivolous

argument against treating the identified claim as representative, it is precluded

from arguing the eligibility of the other claims in the group.  Id. (citations omitted).

Claim 1 of the '725 Patent recites:

A method of marketing and distributing multimedia, the method comprising:

receiving, by a server, multimedia material and advertising material from a producer or owner of said multimedia material, said advertising material being associated with said multimedia material, said advertising material comprising audio and video components;

storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format;

providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;

providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;

downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material; and

providing said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, said purchasers downloading said correlated

information in a digital format corresponding to said advertising material that is associated with said multimedia material, said purchasers storing the downloaded correlated information in a digital format corresponding to said advertising material; and

wherein said purchaser is an exhibitor exhibiting said multimedia material, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital format corresponding to said stored associated advertising material, being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed.

'725 Patent at 16:19–17:2.

As the party challenging the '725 Patent, DCDC has the initial burden to make a prima facie showing that the representative claim is "substantially similar and linked to the same" allegedly abstract concept of organizing, distributing, and marketing media content and related advertisements as the other claims at issue. Mobile Acuity, 110 F.4th at 1290. The '725 Patent includes twenty-three claims, with five independent claims: method Claims 1, 13, 15, and 22, and apparatus Claim 14. '725 Patent at 16:19–20:30. DCDC argues that these claims are not materially different from Claim 1. Def.'s Br. at 17–20; Def.'s Reply Br. at 10–11. DCDC asserts that Claims 2–12 depend on Claim 1 and are substantially similar and linked to the same abstract idea of organizing, distributing, and marketing media content and related advertisements. Def.'s Br. at 17. DCDC states that

Claims 2–12 add only insignificant limitations, propose no technological improvement, and fail to provide the necessary inventive concept required to transform Claim 1's abstract idea into a patentable invention. Id. at 18. DCDC argues that Claims 2 and 3 describe digitizing "non-digital media" for computer storage but describe no new method for doing so. Id.; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:3–10. DCDC contends that Claim 4 recites accessing a server "over a public communication system" and that this recitation of a public communication system does not render the claim patent eligible. Def.' Br. at 18–19; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:11–13. DCDC avers that Claim 5 recites "the public showing of a motion picture," and that Claims 7–10 describe common features of movies, trailers, and advertisements and do not qualify as inventive concepts and do not render Claim 1 less abstract. Def.'s Br. at 19; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:14–15, 17:19–32. DCDC asserts that Claim 6 recites "providing a search function" for media content and that such search operation is a routine computer function and provides no improvement. Def.'s Br. at 19; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:16–18. DCDC states that Claims 11 and 12 automate a common business practice of collecting and tracking sales data for royalties and further marketing programs. Def.'s Br. at 19–20; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:33–41. Defendant argues that the Court does not need

to address Claims 13–23, but to the extent that these claims are considered, they are also directed to a patent ineligible concept for the same reasons as Claim 1. Def.'s Reply Br. at 10; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:42–20:30.

While DMTH avers that Claim 1 is not representative of all claims in the '725 Patent, DMTH admits that "[d]ependent [C]laims 2–12, comprising the same elements as [C]laim 1 but with additional limitations, are likewise not directed to abstract ideas." Pl.'s Resp. Br. at 1, 19. However, DMTH does not articulate how Claims 2–12 have additional limitations that differ from Claim 1.

DCDC argues that dependent Claims 2–12 are silent on how the desired result is achieved because the claims do not require any nonconventional computer, network, or display components. Def.'s Br. at 20 (citing Electric Power Group, LLC v. Alstom S.A., 830 F.3d 1350, 1355–56 (Fed. Cir. 2016)). The Court observes that Claims 2–12 describe using generic computers to perform the functions of marketing and distributing multimedia, including receiving, storing, exhibiting, searching, and providing data. '725 Patent at 17:3–17:41. These functions are nearly identical to the method of marketing and distributing multimedia described in Claim 1, which includes receiving, storing, providing, downloading, and displaying data. '725 Patent at 16:19–17:2.

The Court holds that DCDC has made a prima facie showing that the '725

Patent claims are "substantially similar and linked to the same" allegedly abstract concept of organizing, distributing, and marketing media content and related advertisements. Mobile Acuity, 110 F.4th at 1290.

The burden now shifts to DMTH to present a non-frivolous argument for why the eligibility of Claim 1 cannot be fairly treated as representative of all claims. Id. DMTH states that Claim 1 should not be treated as representative, that dependent Claims 2–12 are comprised of the same elements as Claim 1, but with additional limitations, and that the claims are not directed to abstract ideas. Pl.'s Resp. Br. at 16–19. DMTH has not shown that any of the claim limitations contained in the remaining '725 Patent claims are significantly distinct from those in Claim 1 and would require a separate eligibility analysis. See Berkheimer, 881 F.3d at 1365. The Court further notes that DMTH's Complaint does not address any of the '725 Patent's claims other than Claim 1. See Compl. Accordingly, the Court will consider Claim 1 of the '725 Patent as representative of the other patent claims.

## A. Alice Step One

The Court first assesses Alice's step one, examining the "character as a whole" or "focus" of the claims to determine whether they are "directed to" an abstract idea. SAP Am., Inc., 898 F.3d at 1167. District courts may compare the

claims at issue to claims already found to be directed to an abstract idea in previous

cases to inform the step one analysis.  See Enfish, 822 F.3d at 1334.

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has "treated

collecting information, including when limited to particular content (which does

not change its character as information), as within the realm of abstract ideas,"

along with the analysis and display of information.  Elec. Power Grp., LLC v.

Alstom S.A. ("Electric Power Group"), 830 F.3d 1350, 1353 (Fed. Cir. 2016); see

also In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016)

(concluding that claims that classify an image and store the image based on its

classification is directed to the abstract idea of classifying and storing digital

images in an organized manner and fail to add an inventive concept sufficient to

confer patent eligibility); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089,

1096 (Fed. Cir. 2016) (concluding that claims directed to collecting and analyzing

information to detect misuse and notify a user when misuse is detected merely

grafts generic computer components onto otherwise-ineligible method claims and

are patent-ineligible); CardioNet, LLC v. InfoBionic, Inc., 816 F. App'x 471, 475

(Fed. Cir. 2020) (concluding that claims directed to collecting, analyzing, and

displaying cardiac data are abstract concepts); Content Extraction & Transmission

LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014)

(concluding that the claims of the asserted patents are drawn to the abstract idea of

collecting data, recognizing certain data within the collected data set, and storing

that recognized data). The CAFC has explained that claims reciting those

concepts, either individually or collectively, "fall into a familiar class of claims"

directed to patent-ineligible concepts:

> Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas. In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

Elec. Power Grp., 830 F.3d at 1353–54 (internal citations omitted).

Claims that are merely directed to an abstract idea and applied with generic,

conventional computer components have been held consistently to be patent

ineligible. See Intell. Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363,

1367–69 (Fed. Cir. 2015) (claims adding generic computer components to

financial budgeting); OIP Techs. Inc. v. Amazon.com, Inc, 788 F.3d 1359, 1362–

64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using

conventional computer activities); Ultramercial, Inc. v. Hulu, LLC

("Ultramercial"), 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying an

exchange of advertising for copyrighted content to the internet); buySAFE, Inc. v.

Google, Inc., 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims adding generic

computer functionality to the formation of guaranteed contractual relationships).

DCDC contends that Claim 1 of the '725 Patent is invalid because it is

directed to the abstract idea of (or well-known business practices of) organizing,

distributing, and marketing media content and related advertisements, and these

abstract ideas are implemented using generic computers without adding an

inventive concept.  Def.'s Br. at 7.  DCDC asserts that Claim 1 "focuses on the

generic business practices of organizing media contents' advertising material,

along with the media content itself; distributing media content, samples of it, and

its advertising material to purchasers; and marketing media content and related

advertisements."  Id. at 9–10.  DCDC states that these limitations are: (1) directed

to organizing media content by "associat[ing] or "correlat[ing]" certain media with

advertisements; (2) directed to the distribution of media content and

advertisements; and (3) covering conventional marketing practices, such as

providing samples to potential purchasers, allowing purchasers to locally market

and sell said multimedia material, and exhibiting said multimedia material in a

public place.  Id. at 8–9.

DMTH responds that Claim 1 is not directed to an abstract idea but instead is

directed to a specific method for distributing and displaying both multimedia

material and advertising material that involves packaging multimedia material into

"correlated information."  Pl.'s Resp. Br. at 1.

The '725 Patent "relates to the marketing and distribution of multimedia

material, including digitally generated film, video, graphics and audio, and

analog[] traditional media converted into digital movie and television programs,

and associated materials for distribution over a computer network to exhibitors and

broadcasters."  See '725 Patent at 1:20–25.  The '725 Patent describes a central

server having a computer readable storage media for storing multimedia material,

such as motion pictures and television programming, in digital format that is

connected to a communications network (such as the Internet) for exhibitors (such

as theaters and television stations) to preview available programming, verify the

ownership of such material, and review contract provisions for obtaining and

paying for the desired programming along with marketing materials for the

program and movie.  See '725 Patent.  The central server loads material into the

storage media as it is received from producers and owners of such material, retains

data regarding requests for material, such as titles requested, who requested each,

and where the requesters are located geographically so that producers can market

their material more economically.  Id.

Claim 1 includes six steps for the organization and distribution of such

multimedia content and a "wherein" limitation that describes the purchaser of the

media content and related advertisements and the display of such content. The

steps include: (1) receiving multimedia material (or media content) and associated

advertisements; (2) storing media content and associated advertisements; (3)

providing potential purchasers with access to this material; (4) providing potential

purchasers with samples; (5) downloading of material to potential purchasers; (6)

delivering media content and associated advertisements to purchasers in response

to a request; and the "wherein" limitation describing how purchasers can exhibit

the content, such as showing a film in a public theater in exchange for paid

admission. See id. at 16:19–17:2.

Claims that merely apply computer technology to the distribution of media

content have been invalidated under 35 U.S.C. § 101 by the CAFC. See, e.g.,

Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014). The CAFC

concluded that the claims in Ultramercial were directed to non-patent-eligible

matter:

> This ordered combination of steps recites an abstraction—an idea,
> having no particular concrete or tangible form. The process of
> receiving copyrighted media, selecting an ad, offering the media in
> exchange for watching the selected ad, displaying the ad, allowing the
> consumer access to the media, and receiving payment from the sponsor
> of the ad all describe an abstract idea, devoid of a concrete or tangible
> application. Although certain additional limitations, such as consulting
> an activity log, add a degree of particularity, the concept embodied by
> the majority of the limitations describes only the abstract idea of
> showing an advertisement before delivering free content.

Id. at 715.

Similar to Claim 1 of the '725 Patent, the claims in Ultramercial recited processes relating to media distribution and the facilitation of the exhibition of media content to users. Id. at 712. Claim 1 recites similar limitations directed to the organizing of media content through the receiving and storage of the media content and associated advertisements, distribution of media content through providing potential purchasers with access to the server, and marketing of media content through providing potential purchasers with samples and an exhibitor to exhibit such media content. See '725 Patent at 16:19-17:2. The Court concludes that nothing in representative Claim 1, understood in light of the specification, requires anything other than conventional computer technology for receiving, sending, storing, and retrieval of information.

DMTH argues that the exhibition of the media content, such as in a public theater or broadcast exhibitor, is a tangible display of media content that renders the claim to not be abstract. Pl.'s Resp. Br. at 19. The Court is not persuaded by this argument because the focus of the claims is on "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." See Enfish, 822 F.3d at 1335–36.

Therefore, the Court concludes that Claim 1 of the '725 Patent is directed to the abstract idea of organizing, distributing, and marketing media content and

related advertisements.  Because Claim 1 is the representative claim, and Plaintiff's

Complaint alleges only Claim 1 to support its patent infringement allegations, the

Court does not provide an analysis of Claims 13–24.[2]  The Court now turns to step

two of the Alice analysis.

## B. Alice Step Two

At step two, the Court looks at "the elements of each claim both individually

and 'as an ordered combination' to determine whether the additional elements

'transform the nature of the claim' into a patent-eligible application."  Alice, 573

U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of claim must

amount to more than "well-understood, routine, conventional activity").  "The

question of whether a claim element or combination of elements is well-

understood, routine and conventional to a skilled artisan in the relevant field is a

question of fact . . . [and] must be proven by clear and convincing

evidence."  Berkheimer, 881 F.3d at 1368.

---

[2] DMTH asserts that independent Claim 14 is not directed to an abstract idea because it claims a specific collection of hardware components that operate together to display content to an audience at a particular time and place.  Pl.'s Resp. Br. at 2.  As discussed above, the patent specification does not indicate anything other than conventional computer technology for receiving, sending, storing, and retrieval of information.  Claim 14 is directed to an abstract idea and lacks an inventive concept as its hardware elements are general-purpose components that are not specific to the claimed invention.  See also Planet Bingo, LLC v. VKGS LLC, 576 F. App'x 1005 (Fed. Cir. 2014).

DCDC argues that Claim 1 simply uses generic computer technology to receive, store, provide, and download data.  Def.'s Br. at 15–17.

DMTH contends that Claim 1 of the '725 Patent recites the inventive concept of using "correlated information" to identify "multimedia material" and that Claim 11 additionally recites "automatically collecting sales information" related to such multimedia material, none of which was a conventional or generic technology in May 2000.  Pl.'s Resp. Br. at 22.

DCDC replies that Claim 1's recitation of "correlated information" does not provide an inventive concept because the claims do not describe how media content is associated with advertising material, only reciting the result of "said advertising material being associated with said multimedia material" without specifying how the association is determined or the criteria used for the correlation, and nothing in the claimed method improves or describes how a computer would implement this correlation.  Def.'s Reply Br. at 8.

The Court concludes that Claim 1 does not recite or provide specific improvements to the computer technology used to implement the claimed method. Claim 1 recites "storing said multimedia material and associated advertising material . . . as correlated information in digital format" through computer hardware components such as a "server system," a "computer readable storage medium," and a "communication network."  See '725 Patent at 16:19–17:2, 16:26–

28.  The specification does not indicate anything other than conventional computer

technology for receiving, sending, storing, and retrieving information, nor does the

specification indicate what kind of technology is used for the "correlated

information" between the media content and associated advertisements.  See id. at

3:13–17, 8:48–49.

Therefore, the Court holds that Claim 1 of the '725 Patent lacks an inventive

concept.  Accordingly, representative Claim 1 does "no more than claim the

application of generic machine learning to new data environments, without

disclosing improvements to the machine learning models to be applied, [and] are

patent-ineligible under §101."  All Terminal Servs., LLC v. Roboflow, Inc., C.A.

No. 25-476-WCB, 2025 WL 2576394, at *15 (D. Del. Sept. 5, 2025) (citing

Recentive Analytics, Inc. v. Fox Corp., 134 F.4th 1205, 1216 (Fed. Cir. 2025)).

## CONCLUSION

The Court holds that the '725 Patent does not plausibly recite patent eligible

subject matter under § 101 and the Court dismisses Count I based on a lack of

eligible subject matter.

Moreover, although the Court is not required to consider Patent Office

determinations as to eligibility because patent eligibility is a matter of law, see

Beterio, LLC v. DraftKings Inc., 104 F.4th 1350, 1359 (Fed. Cir. 2024) ("[A]

patent examiner's consideration of Section 101 issues does not in any way shield

the patent's claims from Article III review for patent eligibility." (internal quotation omitted)); <u>Sanderling Mgmt. Ltd. v. Snap Inc.</u>, 65 F.4th 698, 705 (Fed. Cir. 2023) ("[C]ourts are not required to defer to Patent Office determinations as to eligibility."), the Court takes judicial notice of the Patent Trial and Appeal Board's ("PTAB") August 25, 2025 determination in <u>Disney Media & Entertainment Distribution LLC v. Digital Media Technology Holdings, LLC</u>, No. IPR2024-00736 (P.T.A.B. Aug. 25, 2025) (D.I. 29-1) as further support of the Court's dismissal of the '725 Patent.  The PTAB determined that Claims 1, 4–7, 9, and 11 of the '725 Patent are unpatentable.  <u>See</u> <i>Inter Partes</i> <u>Disney Media & Entertainment Distribution LLC v. Digital Media Technology Holdings, LLC</u>, No. IPR2024-00736 (P.T.A.B. Aug. 25, 2025) (D.I. 29-1).

Because the representative claim fails to satisfy both the first and second steps of the <u>Alice</u> test for patent eligibility, DCDC's motion to dismiss is granted.

ACCORDINGLY, IT IS HEREBY

**ORDERED** that Defendant's Motion to Dismiss (D.I. 12) is granted.

IT IS SO ORDERED this 24th day of September, 2025.

/s/ Jennifer Choe-Groves<br>
Jennifer Choe-Groves<br>
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.